The case is number 2, 180671, People of the State of Illinois, Plaintiff Appellee, versus David Waszak, defendant appellant. Arguing for the appellant, Amherst Dannick. Arguing for the appellee, Katrina M. Coon. Good morning, are both parties ready to proceed? Yes, your honor. Dannick, you can then proceed. May it please the court, counsel, my name is Amherst Dannick from the Office of the State Appellate Defender, and I represent defendant appellant David Waszak. In my work at OSHAD, I have the opportunity to review many records in many cases. And yet, as I read the record in this specific case, I was absolutely floored when I came to the defense's cross-examination of the state's final rebuttal witness. The rebuttal witness was a police officer who disclosed the existence of a supplemental report that the defense had never received from the state in discovery. But rather than approach the bench, deal with the discovery violation, defense counsel kept asking questions about the contents of that unknown report. And the answers became more damaging as the witness went on and on. His questions to that witness elicited facts that had not come out in any other way at trial. That this witness had received a phone call from, quote, another potential victim. That this officer had made a supplemental report about the call, that the victim did not want to be involved. And then counsel asked, quote, when you say another victim of the same charges or different charges? And the officer answered, it would have been similar charges. And counsel left it at that. This was literally the last testimony the jury heard before it went to deliberate. Counsel did not seek a limiting instruction or move for a mistrial. And counsel's assistance in this case at that point fell so far below an objective standard of reasonableness as to frankly be shocking. And Mr. Wozniak was prejudiced by his counsel's deficient performance. The evidence in this case came down really solely to what he said, she said version of events without any extrinsic evidence. And in this case, it was the defense. It was the defense counsel that elicited this damaging other crimes testimony and then did nothing to attempt to correct that. There were so many points at which defense counsel could have stopped this from continuing to happen. One, he could have objected to calling the officer the rebuttal witness at all. She provided no testimony regarding any material facet issue in this case, nor did she offer anything that directly contradicted the defense's witnesses. Two, as soon as she mentioned a report that counsel knew nothing about, ask for a sidebar, object to the violation, do something, say to the judge, I was never given this report, ask for a continuance. I mean, the record clearly shows counsel's surprise, but rather than handle it in a reasonable fashion, he just kept going. Which leads to three, he could have stopped asking questions. He's an advocate for his client. He is the only advocate for his client in that courtroom. It was not his job to satisfy his own curiosity about, hey, what's in that report, by continuing to ask questions that he had no idea about the answer. The fact that it was defense counsel who introduced the language referring to the other alleged incidents as charges, this didn't even come initially from the witness. This came from counsel. He said, were these the same or different charges with an implication that there may have been other criminal charges, which was just not the fact. There was no indication whatsoever that these may have been criminal charges. He injected that into the dialogue. By this point, it's hard to say with a straight face that counsel's acting as an advocate, because at that moment, this case completely shifted. It was no longer he said, she said, because at the 11th hour, the defense introduced a second she said. This is incredibly damaging given the nature of the testimony and given the closely balanced nature of the evidence. Four, then counsel could have asked for a limiting instruction, moot for a mistrial. There was a question to which the witnesses response was non responsive. He could have sought to strike that testimony from the witness. And because we simply have no idea what the jury was thinking as it went into the deliberations, having just heard this sort of bombshell information, no guidance, whether or not they could consider it as substantive evidence. It was utterly irresponsible for counsel not to seek some limiting instruction for the jury or move for a mistrial. It's really well established the damaging nature of other crimes evidence. It's clear this kind of evidence. It's not objectionable because it has little probative value, but because it has too much potential probative value. The risk is that it will over persuade a jury who may then convict a defendant just because they think he's a bad person, that he does this kind of thing over and over again. So let's just get rid of them. And so to dig a hole this deep and this damaging and this prejudicial and then keep on digging. This is so far below prevailing professional norms. It's utterly ineffective. This is literally the most damaging type of evidence that could possibly come up in this type of case. The purpose of discovery rules are to provide the defense protection against just this type of surprise and unfairness. Yet with or without the state's violation, if there is some surprise, counsel still has an obligation to cure that damage in whatever way he can in order for it not to result in this type of prejudice to his client. Now, in response, the state suggests this, well, with some kind of trial strategy. You know, counsel wanted to avoid drawing attention to the office's testimony. Yet in this context, that makes no sense. There's no skipping past it. There's no burying this in the middle of someone else's testimony. You can't gloss over this and keep going when it's literally the last testimony the jury hears. And because these allegations, no one had any idea what they actually were other than there was a victim. Maybe there were charges. The jury was really left to speculate as it would as to what this actually was, which, you know, again, is is even more damaging than if they had known or the defense had been able to counter as to, you know, what these, you know, alleged incidents even were. I guess there's a pretty axiomatic maxim. Every new attorney learns in law school. If you don't know the answer, don't ask the question. But counsel asked not just a question. He asked question after question, filed into a disaster. He then made no effort to ameliorate the mess that he had made. And so in considering whether counsel provided ineffective assistance by all prevailing professional norms, this is far below any standard of reasonable reasonableness. There was just no conceivable benefit to Mr. Wozniak with regard to allowing for his counsel to elicit and then allow the officer's testimony to stand. Again, this case rested so heavily on the jury's assessment of credibility, including the credibility of Mr. Wozniak's accuser. The introduction of this second victim was, quote, similar charges at the end of trial was really unbelievable prejudice for the jury to go into deliberation considering. For these reasons, we respectfully request that the court reverse Mr. Wozniak's conviction and remand his case for a new trial. Thank you, Counselor. Justice Hutchinson, do you have any questions? Yes. Thank you. Ms. Danik, was Officer Allen on the witness list that was tendered prior to trial? Yes. Yes, he was. Okay. So that means there is a possibility that she will testify? There was. Yes, that's correct. Had they had any other conversations either in front of the court or that they admitted outside of the presence of the court concerning Officer Allen? When I say they, I mean prosecutor and defense attorney. Let me make sure I'm understanding that. The officer was not called in the prosecution's case in chief. She was called only as a rebuttal witness. But I'm not aware of any specific circumstance outside of the trial itself that had discussed whether she was going to be called. Okay. And the fact, apparently, if I'm reading what happened here correctly, or if I'm trying to understand it correctly, Officer Allen was called in response to witness Swenson's testimony about the flirting or what she considered flirting or inappropriate conduct of the victim here? That's correct. All right. So in that regard, isn't the real issue here, why didn't counsel for Mr. Wozniak move to not let her testify at all? Absolutely. I think that's the first place that counsel erred because she was not an appropriate rebuttal witness. Again, had the state called her in their case in chief, that's one thing they disclosed that. But she provided, there was nothing in her testimony. She wasn't a witness to this. It wasn't a material issue at case. Absolutely. That was the first thing that the defense counsel really failed to do was to object to her being called at all. But your argument before the court and in your brief appears to be once he knew what was going to happen, first of all, he should have stopped asking questions. He should have maybe tendered a limiting instruction. He should have moved to strike. Or in fact, when he said to the court, judge, I don't have, when the jury was out, judge, I don't have this anywhere in my file. Should have moved for mistrial. You don't really argue, do you, that he should have moved to not allow her testimony? Your argument goes to after the fact. Isn't that correct? No. If I could point your honor just to page 15 of our opening brief. I did address the fact that besides the discovery violation, he could have objected to her even having been called. Particularly the fact that a rebuttal witness can only be called to contradict testimony as to a material issue. And that none of her testimony was relevant or even appropriate for purposes of rebuttal. You know, kind of regard to this leaving her business card, et cetera. You know, she didn't even contradict this witness Swinson. And so, you know, there was sort of a, you know, sort of a continuing downward spiral of situations in which defense counsel just completely failed to advocate for his client. And that was, you know, kind of the beginning circumstance that he needed to have said something. And the fact that he didn't object to her as a rebuttal witness was itself unreasonable. Okay. But that's real. So you believe on page 15 is where you emphasize that he should have done. He should have objected to her testifying at all. But basically, don't you frame the issue that he should have done things after the fact to eliminate her testimony? Yes, that is that as well. He was ineffective in multiple ways with regard to her testimony. And if he makes these motions in front of the jury or outside of the presence of the jury doesn't. Is the jury left with some question about what the problem is here? Isn't he drawing attention to this fact? In a sense, potentially, but but again, with this type of propensity evidence or this type of evidence, one having been brought up at the very end of the testimony, courts have found specifically that that things that are brought up at the very end of trial are, you know, particularly in the minds of the jury. And so, first, it was unreasonable simply because of where in the trial it came up, that there wasn't any way to reasonably try to sort of gloss over this. But second, with bringing it, it's so well recognized that bringing in this kind of propensity evidence, usually the state tries to do it and there may be an entire evidentiary hearing prior to trial as to whether this can come in. But it is so axiomatic that this is incredibly damaging to a defendant's defense that to just ignore it at this point was ineffective. All right. Thank you very much, Ms. Danek. And thank you, Justice Bridges. I have no other questions. Thank you, Justice Hutchinson. Justice Zinoff, do you have any questions? Justice Hutchinson asked all the questions I was going to, so I don't. Thank you. Thank you. I have a few questions. Counsel, in light of the charges in this case, wouldn't the statute 115.7.3 and the Donahue and the Theis case allow the introduction of this evidence to prove a propensity? Your Honor, we simply don't know. That is part of, sort of part and parcel of this whole problem, is that we do not know whether, in terms of, you know, had there been a hearing or had there been some argument on the motion in advance, whether this would meet the standard set out by that with regard to, you know, kind of the prongs that need to be met. The proximity in time, the similarity, et cetera, et cetera. And so with regard to this case, counsel did file a motion saying, you know, we don't want any other issues brought in as propensity. And the state said, sure, that's fine. They conceded that issue. They said, you know, we're not going to try to bring any of this in. And so it's such a hypothetical to see, you know, could it have been brought in? Potentially. You know, had that been litigated in some way and hashed out, you know, may this have risen to propensity evidence that the state could have brought in? We simply don't know. And that was the issue that, you know, defense counsel didn't know. There's no explanation. And so it just left the jury to speculate. Well, gee, how bad was this other thing? It may have been even worse than what we're hearing, you know, than what they're alleging at trial. So that was part of the damage. Your objection, so that I'm clear, is not that Officer Allen was called as a rebuttal witness because you agree that with the late or with the witness, I believe her name was went off, who testified about the what she saw between the victim in this case and the descendant. That testimony from Allen was sufficient to support the state's position that they had tried to reach other witnesses and that she never called them. So you're not objecting that she could not be called as a rebuttal. Am I correct? We are objecting that she could, that she should not have been called as a rebuttal. And the reason for that is that she, you know, obviously she was not a witness to, you know, witness Swinson's observation between the defendant and his accuser. But Officer Allen testified that she gave a police card to two totally different employees. And so she didn't even material counter in any way the fact that Swinson herself, when she testified, said, I was never told to call the police. I was never given a card. You know, and so even that element, which one was not a material, is not a material issue. It's a collateral issue. She didn't even counter it. And so we are, you know, again, objecting to that as something that defense counsel should have done is to object to her even having been called as a rebuttal witness. Why shouldn't this court consider defense counsel's failure to immediately respond to Allen's rebuttal statement as trial strategy to avoid highlighting or drawing attention to this potentially damaging testimony? You said that would be crazy, but what else could counsel say when this came out? Sure. Well, the first thing that he could have done is the second that she disclosed a report that he didn't know about, he could have objected at that and he could have stopped right there. And so the fact that he continued to ask questions as soon as the police officer disclosed this, you know, saying, you know, going so far as defense counsel asking her, quote, when you say another victim of the same charges or different charges, he had no strategy to try to minimize this. In fact, he continued to dig the hole even deeper and deeper in the way that he characterized it, frankly, made the officer's testimony that much worse. And so it wasn't reasonable on that regard either to suggest it was trial strategy when his questions to her didn't in any way suggest that he was going to try to just sort of move on to something else or stop cross-examining her at that point. Thank you, counsel. I have no further questions. Justice Hutchinson, do you have any further questions? No, thank you. You covered anything I might have wanted to ask. Okay, thank you. And Justice Zinoff, do you have any additional questions? No, I do not. Thank you. Counsel, at the end of Apley's argument, you will have an opportunity for rebuttal to make sure you are aware of that. And Ms. Kuhn, you may proceed. Good morning, Your Honors. Good morning, counsel. Katrina Kuhn for the people of the state of Illinois. May it please the court. Defendant was convicted of aggravated battery and criminal sexual abuse for his actions while training the victim at her job. Now defendant is attempting to attribute his conviction to five or six words of testimony that occurred in counsel's brief cross-examination of a police officer. And even though the defendant's entire appeal is based on this officer's reference to a supplemental police report, the defendant has not even included this report in the record on appeal and its contents, the actual contents of the report are not even known. And despite this, despite the fact that Officer Allen, there was a brief mention of another incident by an unspecified perpetrator, defendant insists that he was convicted on this basis and not for the, not on the basis of all the testimony that was presented to the jury. Now in making this claim of ineffective assistance, the defendant bears the burden of establishing both prongs of Strickland. The defendant must show prejudice. And that requires not only the possibility, but the reasonable probability that the jury would have acquitted him if his counsel had taken the steps that defendant now argues should have been taken in hindsight. Defendant also argues that the evidence is closely balanced. The trial evidence, as my argument will establish, was not closely balanced. It was not closely balanced because evidence was presented that corroborated the testimony of the victim. And this court is required to consider the strength of all of the evidence in the people's case in contrast to the evidence in the defense case. And contrary to what opposing counsel argued this morning, this was not simply he said, she said argument. The people did present the victim's testimony. The victim was a new nurse trainee being trained by the defendant. And there were numerous times when the victim and the defendant were in a room away from other people. The victim testified that the defendant assaulted the victim and made inappropriate remarks. After it was clear that the victim was not going to return any of defendants advances, a defendant asked that she keep quiet and keep the conversation from anyone else and that he didn't want anyone else to get upset. The defendant and the victim were later seen at a nurse's station and the defendant put his hand on the victim's and she pulled away and told him to stop. The victim properly reported this incident to her supervisor and she met with the CEO of the hospital the following day. And along that line, the victim's testimony is corroborated by two additional state witnesses and those would be the CEO of the hospital and a police officer. The hospital CEO, James Kohik, learned of the victim's prompt complaint and ended up speaking to the defendant three days after this incident. Kohik testified that the defendant admitted touching the victim and discussing sexual topics with the victim. However, defendant claimed that the victim was flirting with him. Defendant then made a statement to Kohik that was very specific and was almost an exact statement that the victim testified to regarding to holding in your urine. And the defendant then admitted to Kohik that he was unprofessional. He apologized for his unprofessional behavior. He admitted that he committed misconduct and he attempted to explain away his behavior by claiming that he was depressed and that he has stress in his personal life. And the people also presented the testimony of Officer Schwartzenruber who interviewed the defendant at the defendant's home about a month after the incident. So by this time, defendant had been out of work for several weeks and he kind of had more time to refine his story. The officer asked the defendant what happened on the day he trained the victim and the defendant didn't respond to the question and started talking about his fiance and how his fiance was ill, apparently attempting to gain sympathy. The officer re-asked the question and then defendant, instead of answering the question again, turned the tables and then claimed that the victim initiated contact with him and made sexually suggestive remarks to him, which was inconsistent with what he told the CEO, James Kohik. The defendant claimed that when he was talking to the victim, he was uncomfortable. The victim was almost stalking him. The victim brought up the topic of living in California and defendant said, well, I made several comments and I was trying to bolster her confidence and make her feel good about herself. The defendant admitted then that he did not, you know, report any conduct that he thought the victim had, you know, any inappropriate conduct by the victim. But then he said he gave her his phone number. He wrote down his phone number and put it in her work attire so he could talk to her outside of work. Again, that's not really credible. And when Officer Schwartz and Rupert told the defendant that the victim's version of events was opposite to defendant's version, defendant had no response. The officer didn't repeat any of the victim's specific accusations to the defendant. However, defendant also said at the end of the interview, he said, well, I heard that the victim said that I touched her breasts and her buttocks and I didn't do that. So he then started to, you know, change his story again. Therefore, you know, in summary, the people's case, the people then provided the victim's account and two additional witnesses that established the defendant's lack of credibility. Now, we asked the court to consider that evidence against the evidence that was presented by the defense. Defendant's testimony further exposed the weakness of his case to the jury. Defendant testified that he didn't make any sexual remarks. His only physical contact with the victim was when she backed up into him when they were in a patient's room. Defendant also testified that he denied the behavior when he was speaking to the CEO, and that is contradicted by the CEO's testimony. The defendant's story to Kohik was also inconsistent with this, the story he gave to Officer Schwartz and Ruber. So, in his testimony, defendant is now providing a third version of events, and he admitted that he referred to his plans to move to California. And he's again contradicting his statement he made to the police officer. He admitted that he gave the victim his phone number, but he said it was so they could talk outside the hospital about the victim's allegedly inappropriate behavior and to talk about personal matters that the victim had brought up to him. Now, this is all despite the fact that it'd be more reasonable if he was concerned about her professionalism to, you know, to discuss that at work in a work setting. And in addition, defendant never noted anything in the victim's training materials that the victim acted unprofessionally. He didn't take any steps to report her. He never brought any concerns about her professionalism to anyone's attention at the hospital. And in addition, the defendant's testimony at trial was often non-responsive to the questions that were being asked. Now, the only other witness presented by the defense was Brandy Swinson, and her testimony is highly, highly suspect and should be viewed with great suspicion. Defendant did not disclose her as a witness before trial. She came forward in the middle of the trial. She said she heard about it, and then she called defendant. She heard that his trial had started, and she said she didn't know the circumstances of how he was fired, but she had information that would help him. Now, Swinson had worked at the hospital since 2009, and she'd known defendant since 2010. And she knew the victim actually before they worked together at the hospital. She said she had known the victim since the victim was 17. And Swinson testified that the victim was acting friendly toward the defendant, and this was, you know, after lunchtime. Now, the victim testified that her training began at 1 p.m., so any of these observations by Swinson could have happened before the training began, and before the incidents that were described by the victim that occurred in different rooms in the hospital. So, therefore, Swinson's observation of the victim was not of the victim after the defendant had assaulted her. Now, that is all that Swinson testified to. Defendant concedes that Swinson was not present when any of this happened. Swinson did not corroborate a defendant's account that the victim made any improper remarks to him. And Swinson's testimony suggests a bias against the victim and a prior experience with police that she was not happy with. She referred to that. And, you know, Brandi Swinson said that she knew that the defendant had interviewed with the CEO on the 23rd, but Swinson was so interested in helping the defendant, however, she didn't go to the CEO or to the police with any of her claims, and she said she didn't know that the police had been at the hospital investigating the victim's claims, even though Dana Allen was there in full uniform, taking statements from various hospital employees, and Swinson said in the post-trial motion testimony that she had seen Allen at the hospital. So, therefore, the motivation behind Swinson's testimony is highly questionable. Counsel, I know you were unable to hear the timer, but your time has elapsed. Would you please finish this statement? Yes, yes, Your Honor. If I can just make two more quick points. I'm sorry, I did not hear the timer. Now, you know, counsel argues this morning that there's no reason for Swinson to testify, there's no reason for Allen to testify, and, you know, that there was testimony that a business card was given to two employees at the hospital. Well, those employees were supervisors, so Allen was pointing out that, yes, I did give my card to employees, and Swinson could have contacted me if she wanted to. And as to Officer Allen, you know, the defendant argues that that was the last argument, that was the last thing that the jury heard before it began deliberations. Now, the jury heard 33 pages of closing argument and instructions that informed the jury of the elements of the crime, and so these isolated words that the defendant highlights on appeal were not even remotely referenced in any closing argument. So, in conclusion, there's no evidence of a knowing discovery violation or any information withheld by police, and the evidence here was not closely balanced because the people presented two witnesses who corroborated the victim's testimony and greatly weakened the defendant's credibility. For these reasons, the people ask that the defendant's convictions for aggravated battery and criminal sexual abuse be affirmed. Thank you. Thank you, Ms. Boone. Justice Hutchinson, do you have any questions? Yes, thank you. Ms. Kuhn, was there some statement for the record or agreement between the parties that the state was not going to be calling any other crimes or bad acts testimony? Your Honor, that was discussed in the record, and it did not appear that the trial court ever ruled on the defendant's motion in Lemonet. I think what the discussion was was that the state said that they would not bring anything up if the defense didn't open the door, I think was how it was stated in the record. Okay. And calling Swinson is what opened the door? Is that what you're saying? No, I'm saying that Officer Allen was a proper rebuttal witness after Swinson testified that she had no ability to report this crime to anyone or to speak to anyone at the hospital. Allen could then come in and testify. I gave my card to people at the hospital. Brandy Swinson could have come forward with this testimony or with this account earlier. That was my argument. Okay. Well, you're saying or you seem to be saying that her presence, Officer Allen's presence at the hospital should have alerted Swinson to this issue, the issue of the defendant. Is it that unusual that there is a police officer at a hospital on any given day at any given time? No, you're right, Your Honor. I'm sure that is a common sight. However, Swinson claimed to have a great interest in this case. If I was so interested in a former coworker that I would call him up and offer to testify at his trial, I think I would have known, I would have been noticing if there was a police officer or if there were people in the hospital who were being interviewed at the time. She claimed she didn't know when the trial occurred, yet she worked in the hospital at the time of the trial and the CEO had just testified. So she claims that she didn't know about this, yet that really is difficult to believe. Well, hospitals work on different shifts, as we're aware. I think we can take judicial notice of that. I mean, was this questioning going on on her shift? Do we have anything in the record that would indicate that it was her shift that it occurred on? Or did she just see an officer around the building? Well, Your Honor, I don't know that we have testimony that she was working a certain shift and that the officer was there during certain hours. I guess my overall argument is that Swinson's testimony needs to really be considered with great skepticism. Because she claims that she was so interested in defendant and that she had information to help him, but she didn't know the circumstances of how he was fired. But yet she comes forward and wants to testify at his trial, and she could have come forward sooner. And once she heard that defendant had been charged, she could have gone to someone at the hospital and said, Hey, this is what I saw, you know, the victim, you know, there's more going on here. And she could have certainly come forward sooner. Well, she did testify that she knew he was fired, but didn't know the circumstances. Did she testify that she knew that he had been charged criminally? She admitted that she was so interested in the defendant's case that she was following the court dates online. And she saw that there were several continuances and she saw that there was a case coming up. Okay, so that I guess your answer is yes, she knew that he had been charged. All right. If Officer Allen's report somewhere disappeared in the cloud, and apparently neither council had that report, how exactly did the state know to call her? Well, first of all, I want to when you say neither council had that report. I want to point out, as I did in my brief that their report was apparently attached to a post trial motion. In the record, but yet the report isn't in the record. So to trial council had the report at some point because he refers to it in his post trial motion. And I'm sorry, then I lost the rest of your question. Well, I mean, it's not really helpful for him to have the report in his post trial motion. It would have been helpful had he had the report. At the time of trial. But as I recall, didn't both attorneys say that they had not received Allen's report prior to trial. I that that may be possible. I mean, I know that the state's attorney said at one point that he thought all the discovery was tendered. I don't. I think what I'm arguing is that whether or not the parties had a trial this court on review is being asked to make a determination without having this report being in the record on appeal. I think it's more important. But, but my question is, on the day of trial when he opted when the state's attorney opted to call Officer Allen. If he did not have any sort of report concerning her activity at the hospital. How did he know to call her Well, I believe he was calling her to rebut Swenson's testimony that she was never given the opportunity to give the police or version of events and Officer Allen was simply testifying that she went She was at the hospital on certain days and that she gave her card to certain people. So I don't know that the existence of the report was of this report was that relevant. Well, let's see what jurisdiction. Are we in here. We're down in the Cal County. They're only, you know, how, how did they know that Officer Allen was actually investigating this case. So there's so few officers that it's kind of like a You know, it must have been her because we don't have any other officers to do this. I'm, I'm confused about how she particularly got called as rebuttal witness. How the how the how Officer Allen got called Well, it was, I mean, she was on a witness list. I mean, she what she testified to and rebuttal was that there was a supplemental police report that she She submitted, but there were other police reports. I'm sure that were that were fully turned over. I mean, I guess I'm not understanding your question of how you know she was disclosed as a witness. All right. And I'll leave it at that. Thank you. All right. Thank you, Justice Bridges. I have no other questions. Thank you, Justice. Justice Zinoff, do you have any questions. Yes. Well, counsel, the state never denied that it had Allen supplemental report, did it? I don't believe the state denied having it. Well, there's no evidence of any Well, let me ask you this. Was there was the state obligated to disclose this report in the absence of a request by defense counsel. Well, there was no People recognize Pardon. Go ahead. I'm sorry, Justice Zinoff, you're cutting out a little bit. Was there a request in writing for this report. I don't believe there was a discovery request by defendant. However, you know, the people acknowledge that, you know, police reports. You know, of officers who are disclosed as witnesses have to be turned over. However, you know, the bottom line here is this, you know, even if defense counsel did commit some, you know, some unreasonable act. You know, and again, there was no discovery request, you know, this is a, you know, this is this is a strickling claim. And this is a two part test. And so that it has the bottom line has to be, was there any prejudice to this defendant, as I pointed out in my review of all the evidence. You know that the evidence was not closely balanced. But anyway, there was not a discovery request by the defendant. And was there not a reasonable probability that the result of the proceeding would have been different, given the fact that this Damaging testimony came at the very end of the trial. You did talk about instructions to the jury and closing argument but Closing argument is not testimony, nor are the instructions and a jury is admonished of that. It's the testimony of the witnesses that the jury must consider in deciding whether to Return a verdict. And so this came at the very end of the testimony. Why wasn't there reasonable probability that the result of the proceeding would have been different, but for Defense counsel's not taking any of the actions that opposing counsel enumerated in her argument. Well, that's simply because the, you know, we, you know, we have no idea as defense counsel argued today. We have no idea what the jury was thinking. They could have been thinking about all of the, you know, the three of the three witnesses that testified for the people and weighing that against the defendant's account, which was totally not believable and the defense. Defendant's testimony was changing, you know, they say that you don't have to, you don't have to work hard to remember what the truth is, but defendant kept changing his story. And so, you know, he wasn't sticking to one story which which, you know, destroys his credibility entirely. Then you have a another another Witness Swenson whose testimony and the timing and the content of her testimony have to be considered highly suspect. So, so really the jury was not presented with two equally plausible versions of events. This evidence was not closely balanced. And the fact that this was the quote unquote last thing that the jury heard You know, we're talking about a few words of testimony and which which were a brief undetailed reference to a different supplemental police report that hasn't even been included in the record on appeal. So, you know, the people would would strongly argue that this case should not be Decided on that isolated basis, but it needs to be decided on the entirety of the evidence and the fact that there was no prejudice to defend it. Thank you. I have no further questions. Thank you, Justice. I have a few questions. Miss. And even though defendant. Council didn't formally request Alan's report explain to this court why defense counsels reliance that no such report existed is not reasonable and lighter the trial courts early order in this case to the state to tender all police reports. Your question is why I wouldn't Counsel's reliance that that report didn't exist and make it, you know, this great surprise. Well, again, I don't think we can really determine that we don't have the report here. And defense, you know, also, I want to point out that defense counsel elicited testimony on the cross examination of the victim. That the victim had told officer Alan that the defendant had been appropriate with other people. So defense counsel can't really argue that he was unaware Of any other incidents, you know, you know, whether it was, it was, you know, ineffective assistance for him to be questioning Alan on this is a separate question. And again, we would argue that that there was no prejudice. Yeah, but see in Ray Julio holds that memorandum, such as what we have here may allow the defense counsel to assume that either no report exists or that it's been tendered and To me, this seems to be a clear discovery violation your argument and your brief is centered around defendants failure to specifically request Alan's report. I mean, was there a discovery violation. Again, there may have been. There's no evidence of any knowing discovery violation. The trial court did not make any finding them in knowing discovery violation. And again, you know, if anything, this was apparently an inadvertent nondisclosure of a supplemental police report. Counsel in your brief you essentially only argue that the evidence in this case was legally sufficient. Is this a tacit admission that you agree with the appellants position that the evidence wasn't closely balanced. No, Your Honor, I do refer to the evidence in my brief and I do the people do argue that the evidence was not closely balanced and that defendant cannot meet, you know, either prong of Strickland, but certainly cannot meet the prejudice prong. Thank you, Council. I have no further questions. Justice Hutchinson. Do you have any further questions. No, thank you. And just as now, do you have any further questions. No, I don't. This court. Thanks, both parties for your arguments this time for rebuttal. Oh, sorry. That's right. Sorry about that. Thank you. Your opportunity for rebuttal. Thank you, Judge. I will keep it brief. The first thing I just want to briefly kind of dispense with, which is this idea that somehow this report needed to have been included on appeal in order for the court to address it. You know, that's just really a complete red herring. The state never denied they had a report. And in fact, Alan testified as to this report, you know, at trial. And so this report existed, you know, there's no question about that. And the issue is not what the actual contents of the report were. The issue is what Alan testified to and what defense counsel elicited on fraud. And so I just want to kind of dispense with that off of that. The second thing is that regarding the closeness of the evidence, again, as you pointed out, justice is not about the sufficiency of the evidence about the closeness of the sufficient evidence. That's the question before the court. And in this case, you have two people who are essentially describing an interaction between themselves on this day. And there's no witness. There's no witness who saw any interaction between the two of them. The only, you know, witness that could describe any interaction at all was Brandy Swinson, who just saw some, you know, questionably inappropriate flirting behavior. You know, but we don't know that that was at that same time or not. There was no outside witness to any of this. And what we have here, basically, between Mr. Wozniak's description and Ms. Kasulis' description is a difference between, you know, with Mr. Wozniak's version. You know, maybe HR needed to sit down with these folks and say, hey, let's go over the employee handbook about what's appropriate, you know, workplace behavior between the two of you, right? You know, Ms. Kasulis, you can't be flirting and saying these things and talking about how you're unhappy with your boyfriend and needing, you know, any, that's Mr. Wozniak's testimony, basically. That's, you know, HR intervention, you know, at maximum. But instead, he is charged with felony criminal sexual abuse that then requires him to register as a sex offender. This is what the jury has to consider, right? You know, he absolutely talked about, you know, some of the things that occur between the two of them. And in fact, the fact that some of those things were actually consistent with each other goes to support his truthfulness as well. Finally, the jury did find him not guilty on one charge, the sexual abuse charge that he had touched her breast. And so I really do think that the jury at least did not believe some of her testimony. And so I just kind of wanted to address the closeness of the evidence. And then with regard to, with regard to Allen's testimony, again, you know, kind of asking for inference upon inference. Allen had no idea whether the supervisors passed her cards on to any of the other employees at the, at the facility. Furthermore, what Swenson observed, you know, the fact that Ms. Kasulis was flirting and kind of acting inappropriately and touching him a little bit. No reasonable person would think, oh, hey, I've got some information about why this person was fired when I have no idea why he was even fired. You know, I may or she may or there was no testimony. She actually saw the police there that that she witnessed that. This is not the kind of thing that I, that someone says, oh, hey, let's go to the police about this. It's only after the fact, learning about the criminal charges and the nature of those charges that she thinks, oh, hey, this might be relevant. But no one contacted me. No one reached out to me about this. I feel I have an obligation to kind of pass this on just in light of what he ended up getting charged with, because now I understand it's relevant. And so, you know, again, this idea that Alan would be called when Swanson Ruber was actually the police investigator on the case. He was the one who questioned Mr. Wozzeck. It's so tenuous that our argument is regarding the appropriateness of her as a rebuttal witness, I think, is absolutely relevant in stance. Thank you. Thank you, counsel. Justice Hutchinson, do you have any questions? Yes. Let's just take your last statement, counsel. If it was the absolute appropriateness of her called being called as a rebuttal witness. Why didn't why wasn't there some action to try to prevent her from being called? I think that was ineffective on counsel's part. I think there absolutely should have been some action to prevent her from being called. Okay. I'm going to ask the same question I asked of Ms. Kuhn. If neither party seemed neither the state or or counsel for your client seemed to have a copy of this supplemental report. And I may be wrong that it was that the state actually denied ever having it. But at this point, that neither one of them had it. The minute somebody gets called like that, why doesn't somebody object? Correct. That's exactly our point. Why didn't defense counsel object? Defense counsel is an advocate. The second he realizes he doesn't have this report, you stop asking questions. You go for a sidebar with the judge. You bring this up. You say, hey, the court ordered the state to turn over all this evidence, whether it was inadvertent or intentional. Or, you know, we're not arguing. We're not alleging it was intentional. It's neither here nor there, whether it was intentional or inadvertent. The second he learns that there's this report, you stop asking what's in the report. Let's find out, you know, let's see how damaging this actually is. No, you go to the judge. You say, judge, I believe there's a discovery violation. We never got this report. That's that's what any appropriate counsel steps would have taken. Okay, but that's that's the point here. The only place you argue this issue is on a discovery violation. You do not argue it, at least my reading of the brief, on ineffective assistance of counsel. You say he should have either asked for a mistrial motion to strike. Hearing instruction, you don't say as to the ineffective assistance is that he should have asked us to not let her testify. That's where I'm confused. Judge, I don't, I don't, I don't mean to disagree with you. Our argument with that is under Section A, which is, which is contained under Section A. Again, that subheading is, you know, the discovery violation. It is a part of that as well in our reply on pages six and pages. Oh, I'm so sorry. I got to get it right on pages four at the bottom of four in the bottom and the top of five. You know, again, we readdress the fact that Alan did not provide appropriate rebuttal testimony. This wasn't regarding, you know, sufficiency of the evidence. This was, you know, squarely within one of the issues that the defense counsel failed on. And, you know, again, I I don't know if that answers your question. Okay. I appreciate the answer. Thank you very much. And Justice Bridges, I have no other questions. Thank you, Justice Hutchinson. Justice Zinoff, do you have any questions? No, I don't. Thank you. And I also have no further questions. And I want to thank both parties for your arguments this morning. This case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate the proceedings. Thank you.